## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## CHARLESTON DIVISION

_____  )
                                       )
**UNITED STATES OF AMERICA**           )
                                       )
    **Plaintiff,**   )
                                       )    **Civil Action No.** _2:17-cv-02490-DCN_
    **v.**           )
                                       )    **CONSENT DECREE**
**JW ALUMINUM COMPANY**                )
                                       )
    **Defendant.**   )
_____  )

## TABLE OF CONTENTS

I.  JURISDICTION AND VENUE ............................................................................................... 1
II.  APPLICABILITY ............................................................................................................... 2
III.  DEFINITIONS .................................................................................................................... 3
IV.  CIVIL PENALTY ............................................................................................................... 5
V.  COMPLIANCE REQUIREMENTS .................................................................................... 6
VI.  REPORTING REQUIREMENTS ..................................................................................... 19
VII.  STIPULATED PENALTIES ............................................................................................. 22
VIII.  FORCE MAJEURE .......................................................................................................... 25
IX.  DISPUTE RESOLUTION ................................................................................................. 27
X.  INFORMATION COLLECTION AND RETENTION ...................................................... 29
XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS ........................................... 32
XII.  COSTS .............................................................................................................................. 33
XIII.  NOTICES .......................................................................................................................... 34
XIV.  EFFECTIVE DATE ........................................................................................................... 35
XV.  RETENTION OF JURISDICTION ................................................................................... 35
XVI.  MODIFICATION .............................................................................................................. 35
XVII.  TERMINATION ............................................................................................................... 36
XVIII.  PUBLIC PARTICIPATION ............................................................................................. 37
XIX.  SIGNATORIES/SERVICE ............................................................................................... 37
XX.  INTEGRATION ................................................................................................................ 38
XXI.  FINAL JUDGMENT ........................................................................................................ 38
XXII.  APPENDICES .................................................................................................................. 38
XXIII.  HEADINGS ...................................................................................................................... 39

Plaintiff the United States of America, on behalf of the United States Environmental Protection Agency ("EPA") has filed a Complaint in this action concurrently with this Consent Decree alleging that Defendant JW Aluminum Company, violated Sections 111, 112, 113 and 502(a) of the Clean Air Act, ("CAA" or "Act"), 42 U.S.C. §§ 7411-13 and 7661a, and implementing regulations.  The Complaint alleges that Defendant failed to demonstrate compliance with emission standards through valid performance testing at the Facility, failed to properly label equipment at the Facility, and failed to keep adequate records and submit required information to regulators regarding the operation and maintenance of equipment at the Facility.

Defendant does not admit any liability to the United States arising out of the transactions or occurrences alleged in the Complaint.

The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, before the taking of any testimony, without the adjudication or admission of any issue of fact or law, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  JURISDICTION AND VENUE

1.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1345 and 1355; and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), and over the Parties.  Venue lies in this District pursuant to 28 U.S.C. §§ 1391(b), (c) and 1395(a); and Section 113(b) of the CAA, 42 U.S.C. § 7413(b), because the violations alleged in this Complaint occurred or are occurring at the Facility, which is located within this District.

-1-

2.      For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendant consents to the Court's jurisdiction over this Consent Decree and any such action and over Defendant and consents to venue in this judicial district.

3.      For purposes of this Consent Decree only, Defendant agrees that the Complaint states claims upon which relief may be granted pursuant to Sections 111, 112, 113 and 502(a) of the Act, 42 U.S.C. §§ 7411-13 and 7661a, and implementing regulations.

## II.  APPLICABILITY

4.      The obligations of this Consent Decree apply to and are binding upon the United States, and upon Defendant and any successors, assigns, or other entities or persons otherwise bound by law.

5.      No transfer of ownership or operation of the Facility, whether in compliance with the procedures of this Paragraph or otherwise, shall relieve Defendant of its obligation to ensure that the terms of the Decree are implemented, unless (1) the transferee agrees to undertake the obligations required by this Decree and to be substituted for the Defendant as a Party under the Decree and thus be bound by the terms thereof, and (2) the United States consents to relieve Defendant of its obligations.  The United States' decision to refuse to approve the substitution of the transferee for the Defendant shall not be subject to judicial review.  At least 30 Days prior to such transfer, Defendant shall provide a copy of this Consent Decree to the proposed transferee and shall simultaneously provide written notice of the prospective transfer, together with a copy of the proposed written agreement, to EPA Region 4, the United States Attorney for the District of South Carolina, and the United States Department of Justice, in accordance with Section XIII of this Consent Decree (Notices).  Any attempt to

-2-

transfer ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Consent Decree.

6.     Defendant shall provide a copy of this Consent Decree to all officers, plant managers, and their directly reporting supervisory managers, and shall ensure that each officer, employee, and agent whose duties might reasonably include compliance with any provision of the Consent Decree is made aware of this Consent Decree and of the requirements of this Consent Decree that fall within such person's duties, including any contractor retained to perform work required under this Consent Decree.  Defendant shall condition any such contract upon performance of the work in conformity with the terms of this Consent Decree.

7.     In any action to enforce this Consent Decree, Defendant shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

## III.  DEFINITIONS

8.     Terms used in this Consent Decree that are defined in the Act or in regulations promulgated pursuant to the Act shall have the meanings assigned to them in the Act or such regulations, unless otherwise provided in this Consent Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions apply:

a.     "Aluminum Coating Line" means the aluminum coil coating line (ACL-1) operated by Defendant at the Facility;

b.     "Complaint" means the complaint filed by the United States in this action;

-3-

c.    "Consent Decree" means this Consent Decree and all attached appendices (listed in Section XXII);

d.    "Day" means a calendar day unless expressly stated to be a business day.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday or federal holiday, the period shall run until the close of business of the next business day;

e.    "Defendant" means the JW Aluminum Company;

f.    "EPA" means the United States Environmental Protection Agency and any of its successor departments or agencies;

g.    "Effective Date" has the definition provided in Section XIV;

h.    "Facility" means Defendant's facility located at 435 Old Mount Holly Road, Mount Holly, South Carolina;

i.    "Holding Furnaces" means holding furnace #1 (HF-1), holding furnace # 2 (HF-2), holding furnace #3 (HF-3), holding furnace #4 (HF-4) and holding furnace #5 (HF-5) at the Facility.

j.    "In-line Fluxers" means the in-line fluxers at the Facility.

k.    "Melting Furnaces" means melting furnace #1 (MF-1), melting furnace #2 (MF-2), melting furnace #3 (MF-3) and melting furnace #4 (MF-4) (also referred to as "Furnace 5") at the Facility.

l.    "Paragraph" means a portion of this Consent Decree identified by an arabic numeral;

m.    "Parties" means the United States and Defendant;

-4-

n.    "Secondary Aluminum MACT" means the National Emission Standards for Hazardous Air Pollutants for Secondary Aluminum Production set forth at Part 63, Subpart RRR of the National Emission Standards for Hazardous Air Pollutants for Source Categories, 40 C.F.R. § 63.1500 *et seq.*;

o.    "Section" means a portion of this Consent Decree identified by a roman numeral;

p.    "State" means the State of South Carolina;

q.    "United States" means the United States of America, acting on behalf of EPA.

## IV.  CIVIL PENALTY

9.    Within 30 Days after the Effective Date, Defendant shall pay the sum of two hundred and thirty thousand dollars ($230,000) as a civil penalty, together with interest accruing from the date on which the Consent Decree is lodged with the Court, at the rate specified in 28 U.S.C.§ 1961 as of the date of lodging.

10.    Defendant shall pay the civil penalty due at https://www.pay.gov to the U.S. Department of Justice account, in accordance with instructions to be provided to Defendant, following entry of the Consent Decree, by the Financial Litigation Unit ("FLU") of the U.S. Attorney's Office for the District of South Carolina, 1441 Main Street, Suite 500, Columbia, South Carolina, 29201, phone number (803) 929-3000.  The payment instructions provided by the FLU will include a Consolidated Debt Collection System ("CDCS") number, which Defendant shall use to identify all payments required to be made in accordance with this Consent Decree.  The FLU will provide the payment instructions to:

-5-

Ned Damron
Director of Technical Engineering
JW Aluminum Company
435 Old Mt. Holly Road
Mount Holly, SC 29445

on behalf of Defendant.  Defendant may change the individual to receive payment instructions on its behalf by providing written notice of such change to the United States and EPA in accordance with Section XIII (Notices).

11.    At the time of payment, Defendant shall send notice that payment has been made: (i) to EPA via email at acctsreceivable.cinwd@epa.gov or via regular mail at EPA Cincinnati Finance Office, 26 Martin Luther King Drive, Cincinnati, Ohio 45268; and (ii) to the United States via email or regular mail in accordance with Section XIII (Notices).  Such notice shall state that the payment is for the civil penalty owed pursuant to the Consent Decree in "United States v. JW Aluminum Company" and shall reference the civil action number, CDCS Number and DOJ case number 90-5-2-1-09845.

12.    Defendant shall not deduct any penalties paid under this Consent Decree pursuant to this Section or Section VII (Stipulated Penalties) in calculating its federal income tax.

## V.  COMPLIANCE REQUIREMENTS

13.    Hydrogen Fluoride Testing.  Within 90 Days after the Effective Date, Defendant shall conduct one or more hydrogen fluoride tests  in accordance with the Hydrogen Fluoride Testing Plan included at Appendix A and the following provisions:

a.    Defendant shall provide written notice to EPA and the State of the testing date or dates selected at least 14 Days prior to commencing any testing under this

-6-

Paragraph.  Upon request, Defendant shall provide full access to the Facility as necessary for representatives of EPA and the State to observe and monitor any such testing.

b.     Defendant may conduct multiple hydrogen fluoride tests in accordance with this Paragraph, and may vary the sulfur hexafluoride content of the flux (so long as it consists solely of argon or nitrogen and sulfur hexafluoride) and/or the flow rate of the flux used in such testing.  Regardless of the number of hydrogen fluoride tests conducted, Defendant shall, within 120 Days of the Effective Date, designate one test as the "Final Hydrogen Fluoride Testing" for purposes of compliance with this Consent Decree.

c.     If the Final Hydrogen Fluoride Testing results in detection of hydrogen fluoride at or above the detection limit specified in Section 7.2 of the Hydrogen Fluoride Testing Plan, this shall constitute a "Detect Result" for purposes of this Consent Decree. If the Final Hydrogen Fluoride Testing results in no detection of hydrogen fluoride at or above the detection limit specified in Section 7.2 of the Hydrogen Fluoride Testing Plan, this shall constitute a "Non-Detect Result" for purposes of this Consent Decree.

d.     Within 120 Days after the Effective Date, Defendant shall submit to EPA and the State the full results of all tests performed under this Paragraph, including all raw data collected during testing and any supporting documentation necessary to interpret the results. The test Defendant has designated as the "Final Hydrogen Fluoride Testing" pursuant to Paragraph 13.b shall be conspicuously labeled "Final Hydrogen Fluoride Testing for purposes of Consent Decree."

14.     <u>Additional Provisions If the Final Hydrogen Fluoride Testing Produces a</u> <u>Detect Result</u>.  If the Final Hydrogen Fluoride Testing produces a Detect Result as defined in Paragraph 13.c, the following terms apply:

a.     For purposes of compliance with the Secondary Aluminum MACT, Defendant shall classify and treat any fluxing agent used at the Facility and containing any quantity of sulfur hexafluoride as a "reactive" flux, rather than as a "nonreactive" flux.  Use of such flux material shall constitute "reactive fluxing" as defined at 40 C.F.R. § 63.1503. Accordingly, the parameters in Appendix A, Section 5.0 (Process Description) shall not apply.

b.     So long as Defendant employs a fluxing agent containing any quantity of sulfur hexafluoride in the Holding Furnaces, the Holding Furnaces are "group 1 furnaces" rather than "group 2 furnaces" for purposes of the Secondary Aluminum MACT, and accordingly, Defendant shall ensure that the Holding Furnaces comply with all requirements for group 1 furnaces set forth in the Secondary Aluminum MACT, and shall not contend, for purposes of certifying compliance with the Secondary Aluminum MACT or any other provision of State or federal law, that "only nonreactive, non-HAP-containing/non-HAP-generating fluxing gases or agents" are used in the Holding Furnaces.

c.     So long as Defendant employs a fluxing agent containing any quantity of sulfur hexafluoride in the In-line Fluxers, they are "in-line fluxers that use reactive flux material" rather than "in-line fluxers using no reactive flux material" for purposes of the Secondary Aluminum MACT, and accordingly, Defendant shall comply with all requirements for in-line fluxers that use reactive flux material set forth in the Secondary Aluminum MACT, and shall not contend, for purposes of certifying compliance with the Secondary Aluminum

-8-

MACT or any other provision of State or federal law, that "only nonreactive, non-HAP-containing/non-HAP-generating fluxing gases or agents" are used in the In-line Fluxers.

        d.     Within 60 Days of Defendant's submittal to EPA of test result data showing a "Detect" result in the Final Hydrogen Fluoride Testing, Defendant shall submit a site-specific test plan for performance testing on the Holding Furnaces to EPA and the State pursuant to 40 C.F.R. § 63.1511(a).  Within 60 Days of EPA approval of the test plan, Defendant shall conduct performance testing on the Holding Furnaces pursuant to the Secondary Aluminum MACT, 40 C.F.R. §§ 63.1511-63.1512.  Upon request, Defendant shall provide full access to the Facility as necessary for representatives of EPA and the State to observe and monitor the performance testing.  Defendant shall provide written notice to EPA and the State of the selected test date(s) at least 14 Days before conducting this performance testing.  Within 30 Days of completing this performance testing, Defendant shall submit the test results to EPA and the State.

        e.     Within 60 Days of Defendant's submittal to EPA of test result data showing a "Detect" result in the Final Hydrogen Fluoride Testing, Defendant shall submit a site-specific test plan for performance testing on the In-line Fluxers to EPA and the State pursuant to 40 C.F.R. § 63.1511.  Within 60 Days of EPA approval of the test plan, Defendant shall conduct performance testing on the In-line Fluxers pursuant to the Secondary Aluminum MACT, 40 C.F.R. §§ 63.1511-63.1512.  Defendant shall provide written notice to EPA and the State of the selected test date(s) at least 14 Days before conducting this performance testing.  Upon request, Defendant shall provide full access to the Facility as necessary for representatives of EPA and the State to observe and monitor the performance testing.  Within 30 Days of completing this performance testing, Defendant shall submit the test results to EPA and the State.

f.      Within 90 Days of Defendant's submittal to EPA of test result data showing a "Detect" result in the Final Hydrogen Fluoride Testing, Defendant shall update the labels on the Holding Furnaces and In-line Fluxers to comply with the labeling requirements of the Secondary Aluminum MACT, 40 C.F.R. § 63.1506(b), so long as Defendant employs a fluxing agent containing any quantity of sulfur hexafluoride in the Holding Furnaces and In-line Fluxers.

g.      Within 90 Days of Defendant's submittal to EPA of test result data showing a "Detect" result in the Final Hydrogen Fluoride Testing, Defendant shall ensure that the weight of feed/charge to or aluminum production from the Holding Furnaces is being measured and recorded as specified in the Secondary Aluminum MACT, 40 C.F.R. § 63.1506(d), so long as Defendant employs a fluxing agent containing any quantity of sulfur hexafluoride in the Holding Furnaces.

h.      Within 90 Days of Defendant's submittal to EPA of test result data showing a "Detect" result in the Final Hydrogen Fluoride Testing, Defendant shall ensure that reactive flux usage and total reactive flux injection rates for the Holding Furnaces and In-line Fluxers are being properly recorded as specified in the Secondary Aluminum MACT, 40 C.F.R. §§ 63.1510(j) and 63.1517(b)(5), so long as Defendant employs a fluxing agent containing any quantity of sulfur hexafluoride in the Holding Furnaces and In-line Fluxers.

15.     Additional Provisions If the Final Hydrogen Fluoride Testing Produces a Non-Detect Result.  If the Final Hydrogen Fluoride Testing produces a Non-Detect Result as defined in Paragraph 13.c, the following provisions apply:

-10-

a.    Any fluxing agent used by Defendant at the Facility consisting solely of argon or nitrogen and sulfur hexafluoride, with a sulfur hexafluoride content (calculated as a percentage by weight) equal to or less than the fluxing agent used during the Final Hydrogen Fluoride Testing, and used at a flow rate equal to or less than the average flow rate used during the Final Hydrogen Fluoride Testing, shall not be considered a "reactive flux" for purposes of Defendant's compliance with the Secondary Aluminum MACT.  This provision is inapplicable to fluxing agents containing substances other than argon or nitrogen and sulfur hexafluoride, and fluxing agents containing more sulfur hexafluoride (calculated as a percentage by weight) than the fluxing agent used during the Final Hydrogen Fluoride Testing.  This provision applies only to fluxing agents used by Defendant at the Facility, and is inapplicable to any other party, or to any other facility that Defendant may operate now or in the future.

b.    Defendant shall, in the revised application referenced in Paragraph 21 (Revisions to Title V Operating Permit), specify that any fluxing agent used in the Holding Furnaces and In-line Fluxers shall not contain more sulfur hexafluoride (calculated as a percentage by weight) than the fluxing agent used during the Final Hydrogen Fluoride Testing, and shall be used at a flow rate not to exceed the average flow rate used during the Final Hydrogen Fluoride Testing.

16.    Labels on Melting Furnaces, Holding Furnaces and In-line Fluxers.

Defendant shall post easily visible labels at each Melting Furnace, Holding Furnace and In-line Fluxer that are compliant with the labeling requirements set forth at 40 C.F.R. § 63.1506(b).  The Parties acknowledge that the labels on the Holding Furnaces and In-line Fluxers may need to be updated pursuant to Paragraph 14.f.  Defendant shall inspect the label at each Melting Furnace,

Holding Furnace and In-line Fluxer at least once per month and shall maintain records of those inspections as required by the Secondary Aluminum MACT, 40 C.F.R. §§ 63.1510(c) and 63.1517(b)(13).  Within 90 Days of the Effective Date, Defendant shall submit to EPA and the State a photograph of the current label at each Melting Furnace, Holding Furnace and In-line Fluxer.

17.    <u>Melting Furnace Monitoring Plan</u>.  Within 60 Days after the Effective Date, Defendant shall implement the Melting Furnace Monitoring Plan for the Melting Furnaces included at Appendix B pursuant to 40 C.F.R. § 63.1510(w).  A copy of the Melting Furnace Monitoring Plan shall be included in the revised OM&M Plan to be submitted pursuant to Paragraph 18.

18.    <u>Operation, Maintenance & Monitoring (OM&M) Plan</u>.  Defendant shall, within 60 Days of completion of the activities set forth above in Paragraphs 13-17, submit to EPA and the State a revised OM&M Plan incorporating all changes resulting from compliance with Paragraphs 13-17 and any other portion of this Consent Decree.  In addition, the revised OM&M Plan shall contain all elements required by the Secondary Aluminum MACT, 40 C.F.R. § 63.1510(b), including but not limited to the following specific information:

a.    *For each Melting Furnace*:

i.    A description of the operating cycle established during the most recent performance test;

ii.    The process operating parameters to be monitored for compliance, including but not limited to:

(1)    established feed/charge weight rates, including but

-12-

not limited to:

(A)     an explanation of worst case scenario used

in the most recent performance test; and

(B)     a description of how the feed/charge weight

and types are determined, monitored and

recorded for each operating cycle.

(2)     established total reactive flux injection rates,

including but not limited to:

(A)     a list of each flux material used and the

chlorine fraction of each flux material used

(expressed in lbs. of Cl);

(B)     total reactive flux injection rate calculations

(expressed in lbs. Cl/ton Al) for the

operating cycle established during the most

recent performance test; and

(C)     a description of how Defendant will

monitor, calculate and record the total

reactive flux injection rate for each

operating cycle.

(3)     all operating parameters addressed under Section 4

of the Melting Furnace Monitoring Plan;

iii.     A description of equipment label inspection and

-13-

recordkeeping procedures as required by 40 C.F.R.

§ 63.1506(b); and

iv.   A description of maintenance procedures and calibration

frequencies for monitoring equipment associated with the

Melting Furnace and its associated control device(s).

b.   *For each Holding Furnace and each In-line Fluxer*:

i.   A description of equipment label inspection and

recordkeeping procedures as required by 40 C.F.R.

§ 63.1506(b);

ii.   A description of maintenance procedures and calibration

frequencies for monitoring equipment associated with the

Holding Furnace or In-line Fluxer and any associated

control device(s);

iii.   A description of how the sulfur hexafluoride concentration

and flow rate for the flux material used in the Holding

Furnace or In-line Fluxer will be monitored and recorded to

ensure compliance with established limitations for these

operating parameters.  Specifically, Defendant shall use

flow gauges to measure the sulfur hexafluoride

concentration and flow rate for the flux material.  Flow

gauge data shall be monitored and recorded (1) once per

shift; (2) each time there is a change in sulfur hexafluoride

-14-

concentration or flow rate of the flux material; and (3) each time maintenance activity is performed on equipment relating to the flux material or flow gauges.  If the Final Hydrogen Fluoride Testing produces a Non Detect Result pursuant to Paragraph 13(c), Defendant shall use these flow gauge measurements as ongoing documentation, in accordance with Paragraph 15, that any fluxing agent used in the Holding Furnaces and In-line Fluxers does  not contain more sulfur hexafluoride (calculated as a percentage by weight) than the fluxing agent used during the Final Hydrogen Fluoride Testing, and is being used at a flow rate not exceeding the average flow rate used during the Final Hydrogen Fluoride Testing; and

iv.     A description of the maintenance procedures and calibration methodologies and frequencies for equipment used to monitor the sulfur hexafluoride concentration and flow rate for the flux material used in the Holding Furnace or In-line Fluxer.  The specified calibration frequency for each piece of equipment shall conform to manufacturer recommendations (if the manufacturer does not provide a recommended calibration frequency, calibration shall be conducted at least every six months).  The description shall

-15-

specify that such equipment will be re-calibrated prior to any performance testing, and each time the equipment is repaired or replaced.

The revised OM&M Plan submitted pursuant to this Consent Decree remains subject to further revision by request of EPA or the State as described at 40 C.F.R. 63.1510(b).

19.    Revised Notice of Compliance Status Report.  Defendant shall, within 60 Days of completing the activities set forth above in Paragraphs 13-17, submit to EPA and the State a revised Notice of Compliance Status Report incorporating all changes resulting from compliance with this Consent Decree and otherwise containing all elements required by the Secondary Aluminum MACT, 40 C.F.R. § 63.1515(b).

20.    Aluminum Coating Line

a.    Defendant certifies that the Aluminum Coating Line is currently used only to coat material less than 0.15 mm (0.006 inch) thick.  Defendant shall, in the revised application referenced in Paragraph 21 (Revisions to Title V Operating Permit), specify that the Aluminum Coating Line is subject to 40 C.F.R. § 63 Subpart JJJJ (National Emission Standards for Hazardous Air Pollutants: Paper and Other Web Coating), and shall include a condition that the Aluminum Coating Line will be used only to coat material less than 0.15 mm (0.006 inch) thick.  Defendant may seek in the future to amend its Title V Operating Permit to once again authorize use of the Aluminum Coating Line to coat material 0.15 mm (0.006 inch) or greater, but any such amendment shall expressly acknowledge and include all federal and State regulations applicable to the Aluminum Coating Line as a result of coating such thicker material.

-16-

b.      Defendant shall comply with all requirements of

40 C.F.R. § 63 Subpart JJJJ applicable to the Aluminum Coating Line, including but not limited

to the following:

i.      Within 45 Days of the Effective Date, Defendant shall

conduct a performance test on the Aluminum Coating Line

in accordance with 40 C.F.R. §§ 63.3360.  The results of

that performance test shall be submitted to EPA within 45

Days of completion of the test.

ii.     Within 30 Days of completion of the performance test,

Defendant shall submit a Notice of Compliance Status in

accordance with 40 C.F.R. § 63.3400(e).

iii.    For 12 calendar months following the Effective Date,

Defendant shall submit all calculations performed under 40

C.F.R. § 63.3370(a) and (c) to EPA.  The calculations shall

be submitted within 15 Days of the end of the calendar

month being reported, and shall include the certification set

forth in Paragraph 31.

iv.     Defendant shall submit to the State, with a copy to EPA,

the semi-annual compliance reports required by 40 C.F.R.

§ 63.3400(c).

c.      In accordance with 40 C.F.R. § 63.10(b)(3), Defendant shall,

within 60 Days of the Effective Date, submit to EPA and the State a written record of its

-17-

determination that the Aluminum Coating Line is not subject to 40 C.F.R. § 63 Subpart SSSS

(National Emission Standards for Hazardous Air Pollutants: Surface Coating of Metal Coil),

signed by the person making the determination and including an analysis (or other information)

that demonstrates why Subpart SSSS is not applicable, and shall maintain a copy of that record

for five years from the date it was provided to EPA and the State.

21.     Revisions to Title V Operating Permit.  Defendant shall, within 90 Days of

completing the activities set forth above in Paragraphs 13-20, submit a revised application to

amend their Title V Operating Permit to the State, with a copy to EPA, incorporating all changes

resulting from compliance with this Consent Decree.  The revised application shall not be a

deliverable subject to Paragraphs 22 – 26 of this Consent Decree.

22.     Approval of Deliverables.  After review of any plan, report, or other item

that is required to be submitted pursuant to this Consent Decree, EPA shall in writing:

(a) approve the submission; (b) approve the submission upon specified conditions; (c) approve

part of the submission and disapprove the remainder; or (d) disapprove the submission.

23.     If the submission is approved pursuant to Paragraph 22, Defendant shall

take all actions required by the plan, report, or other document, in accordance with the schedules

and requirements of the plan, report, or other document, as approved.

24.     If the submission is disapproved pursuant to Paragraph 22.c or 22.d,

Defendant shall, within 30 Days or such other time as the Parties agree to in writing, correct all

deficiencies and resubmit the plan, report, or other item for approval, in accordance with the

preceding Paragraphs.  If the resubmission is approved, Defendant shall proceed in accordance

with the preceding Paragraph.

25.     Any stipulated penalties applicable to the original submission, as provided in Section VII, shall accrue during the 30 Day period or other specified period, but shall not be payable unless the resubmission is untimely or is disapproved; provided that, if the original submission was so deficient as to constitute a material breach of Defendant's obligations under this Decree, the stipulated penalties applicable to the original submission shall be due and payable notwithstanding any subsequent resubmission, subject to the United States' right under Paragraph 39 to reduce or waive stipulated penalties.

26.     If a resubmitted plan, report, or other item is disapproved, EPA may again require Defendant to correct any deficiencies, in accordance with the preceding Paragraphs, subject to Defendant's right to invoke Dispute Resolution and the right of EPA to seek stipulated penalties as provided in the preceding Paragraphs.

27.     Permits.  Where any compliance obligation under this Section requires Defendant to obtain, revise or modify a federal, State, or local permit or approval, Defendant shall submit timely and complete applications to the appropriate agency and take all other actions necessary to obtain all such permits or approvals.  Defendant may seek relief under the provisions of Section VIII of this Consent Decree (Force Majeure) for any delay in the performance of any such obligation resulting from a failure to obtain, or a delay in obtaining, any permit or approval required to fulfill such obligation, if Defendant has submitted timely and complete applications and has taken all other actions necessary to obtain all such permits or approvals.

## VI.  REPORTING REQUIREMENTS

28.     Defendant shall submit the following reports:

-19-

a.     By January 31st of each year after the lodging of this Consent Decree, until termination of this Consent Decree pursuant to Section XVII, Defendant shall submit to EPA a report for the preceding year addressing its implementation of and compliance with the requirements of Section V (Compliance Requirements), including progress made, any problems encountered or anticipated together with implemented or proposed solutions to those problems, the status of any permit applications, and a description of any reports made to State agencies regarding the Facility;

b.     If Defendant violates, or has reason to believe that it may violate, any requirement of this Consent Decree, Defendant shall notify the United States of such violation and its likely duration, in writing, within ten working Days of the Day Defendant first becomes aware of the violation, with an explanation of the violation's likely cause and of the remedial steps taken, or to be taken, to prevent or minimize such violation.  If the cause of a violation cannot be fully explained at the time the report is due, Defendant shall so state in the report.  Defendant shall investigate the cause of the violation and shall then submit an amendment to the report, including a full explanation of the cause of the violation, within 30 Days of the Day Defendant becomes aware of the cause of the violation.  Nothing in this Paragraph or the following Paragraph relieves Defendant of its obligation to provide the notice required by Section VIII of this Consent Decree (Force Majeure).

29.     Whenever any violation of this Consent Decree or any other event affecting Defendant's performance under this Consent Decree, or the performance of its Facility, may pose an immediate threat to the public health or welfare or the environment, Defendant shall notify EPA orally or by electronic transmission as soon as possible, but no later than 24 hours

after Defendant first knew of the violation or event. This procedure is in addition to the

requirements set forth in the preceding Paragraph.

30.    All reports shall be submitted to the persons designated in Section XIII of

this Consent Decree (Notices).

31.    Each report submitted by Defendant under this Section shall be signed by

an official of the submitting party and include the following certification:

> I certify under penalty of law that this document and all
> attachments were prepared under my direction or supervision in
> accordance with a system designed to assure that qualified
> personnel properly gather and evaluate the information submitted.
> Based on my inquiry of the person or persons who manage the
> system, or those persons directly responsible for gathering the
> information, the information submitted is, to the best of my
> knowledge and belief, true, accurate, and complete. I am aware
> that there are significant penalties for submitting false information,
> including the possibility of fine and imprisonment for knowing
> violations.

32.    This certification requirement does not apply to emergency or similar

notifications where compliance would be impractical.

33.    The reporting requirements of this Consent Decree do not relieve

Defendant of any reporting obligations required by the Act or implementing regulations, or by

any other federal, State, or local law, regulation, permit, or other requirement.

34.    Any information provided pursuant to this Consent Decree may be used

by the United States in any proceeding to enforce the provisions of this Consent Decree and as

otherwise permitted by law.

## VII.  STIPULATED PENALTIES

35.     Defendant shall be liable for stipulated penalties to the United States for violations of this Consent Decree as specified below, unless excused under Section VIII (Force Majeure).  A violation includes failing to perform any obligation required by the terms of this Consent Decree, including any work plan or schedule approved under this Consent Decree, according to all applicable requirements of this Consent Decree and within the specified time schedules established by or approved under this Consent Decree.

36.     Late Payment of Civil Penalty.  If Defendant fails to pay any portion of the civil penalties required to be paid to the United States under Section IV of this Consent Decree (Civil Penalty) when due, Defendant shall pay a stipulated penalty of $1,000 per Day for each Day that the payment is late.

37.     Other Compliance Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the compliance requirements set forth in Section V of this Consent Decree:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |
| $750 | 15th through 30th Day |
| $2000 | 31st Day and beyond |

38.     Reporting Requirements.  The following stipulated penalties shall accrue per violation per Day for each violation of the reporting requirements of Section VI:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $500 | 1st through 14th Day |

$750                                    15th through 30th Day

$1,000                                  31st Day and beyond

39.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due or on the Day a violation occurs, whichever is applicable, and shall continue to accrue until performance is satisfactorily completed or until the violation ceases. Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

40.     Defendant shall pay any stipulated penalty within 30 Days of receiving the United States' written demand.

41.     The United States may, in the unreviewable exercise of its discretion, reduce or waive stipulated penalties otherwise due it under this Consent Decree.

42.     Stipulated penalties shall continue to accrue as provided in Paragraph 39, during any Dispute Resolution, but need not be paid until the following:

a.      If the dispute is resolved by agreement or by a decision of EPA that is not appealed to the Court, Defendant shall pay accrued penalties determined to be owing, together with interest, to the United States within 30 Days of the effective date of the agreement or the receipt of EPA's decision or order.

b.      If the dispute is appealed to the Court and the United States prevails in whole or in part, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 60 Days of receiving the Court's decision or order, except as provided in subparagraph c, below.

c.     If any Party appeals the District Court's decision, Defendant shall pay all accrued penalties determined by the Court to be owing, together with interest, within 15 Days of receiving the final appellate court decision.

43.     Defendant shall pay stipulated penalties in the manner set forth and with the confirmation notices required by Paragraphs 10-11, except that the notice shall state that the payment is for stipulated penalties and shall state for which violation(s) the penalties are being paid.

44.     If Defendant fails to pay stipulated penalties according to the terms of this Consent Decree, Defendant shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for Defendant's failure to pay any stipulated penalties.

45.     Subject to the provisions of Section XI of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States (including, but not limited to, statutory penalties, additional injunctive relief, mitigation or offset measures, and/or contempt) for Defendant's violation of this Consent Decree or applicable law. Where a violation of this Consent Decree is also a violation of relevant statutory or regulatory requirements, Defendant shall be allowed a credit, for any stipulated penalties paid, against any statutory penalties imposed for such violation.

## VIII.  FORCE MAJEURE

46.    "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any potential Force Majeure event (a) as it is occurring and (b) following the potential Force Majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

47.    If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic transmission to Denis Kler (contact information provided in Section XIII) within 72 hours of when Defendant first knew that the event might cause a delay.  Within seven Days thereafter, Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; Defendant's rationale for attributing such delay to a Force Majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of Defendant, such event may cause or contribute to an endangerment to public health, welfare or the environment.  Defendant

-25-

shall include with any notice all available documentation supporting the claim that the delay was attributable to a Force Majeure. Failure to comply with the above requirements shall preclude Defendant from asserting any claim of Force Majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Defendant shall be deemed to know of any circumstance of which Defendant, any entity controlled by Defendant, or Defendant's contractors knew or should have known.

48.    If EPA agrees that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by EPA for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. EPA will notify Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

49.    If EPA does not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, EPA will notify Defendant in writing of its decision.

50.    If Defendant elects to invoke the dispute resolution procedures set forth in Section IX (Dispute Resolution), it shall do so no later than 15 Days after receipt of EPA's notice. In any such proceeding, Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a Force Majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Defendant complied with the requirements of Paragraphs 46 and 47,

above.  If Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

## IX.  DISPUTE RESOLUTION

51.    Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree.  Defendant's failure to seek resolution of a dispute under this Section shall preclude Defendant from raising any such issue as a defense to an action by the United States to enforce any obligation of Defendant arising under this Consent Decree.

52.    Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when Defendant sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 25 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 30 Days after the conclusion of the informal negotiation period, Defendant invokes formal dispute resolution procedures as set forth below.

53.    Formal Dispute Resolution.  Defendant shall invoke formal dispute resolu-tion procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of

Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting Defendant's position and any supporting documentation relied upon by Defendant.

54.     The United States shall serve its Statement of Position within 45 Days of receipt of Defendant's Statement of Position.  The United States' Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on Defendant, unless Defendant files a motion for judicial review of the dispute in accordance with the following Paragraph.

55.     Defendant may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XIII of this Consent Decree (Notices), a motion requesting judicial resolution of the dispute.  The motion must be filed within 15 Days of receipt of the United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall contain a written statement of Defendant's position on the matter in dispute, including any supporting factual data, analysis, opinion, or documentation, and shall set forth the relief requested and any schedule within which the dispute must be resolved for orderly implementation of the Consent Decree.

56.     The United States shall respond to Defendant's motion within the time period allowed by the Local Rules of this Court.  Defendant may file a reply memorandum, to the extent permitted by the Local Rules.

57.     <u>Standard of Review</u>.

a.     <u>Disputes Concerning Matters Accorded Record Review</u>.  Except as otherwise provided in this Consent Decree, in any dispute brought under Paragraph 52 pertaining

to the adequacy or appropriateness of plans, procedures to implement plans, schedules or any other items requiring approval by EPA under this Consent Decree; the adequacy of the performance of work undertaken pursuant to this Consent Decree; and all other disputes that are accorded review on the administrative record under applicable principles of administrative law, Defendant shall have the burden of demonstrating, based on the administrative record, that the position of the United States is arbitrary and capricious or otherwise not in accordance with law.

b.    <u>Other Disputes</u>.  Except as otherwise provided in this Consent Decree, in any other dispute brought under Paragraph 53, Defendant shall bear the burden of demonstrating that its position complies with this Consent Decree and better furthers the objectives of the Consent Decree.

58.    The invocation of dispute resolution procedures under this Section shall not, by itself, extend, postpone, or affect in any way any obligation of Defendant under this Consent Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but payment shall be stayed pending resolution of the dispute as provided in Paragraph 42.  If Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section VII (Stipulated Penalties).

## X.  INFORMATION COLLECTION AND RETENTION

59.    The United States and its representatives, including attorneys, contractors, and consultants, shall have the right of entry into the Facility covered by this Consent Decree, at all reasonable times, upon presentation of credentials, to:

a.      monitor the progress of activities required under this Consent Decree;

b.      verify any data or information submitted to the United States under this Consent Decree;

c.      obtain samples relating to matters addressed under this Consent Decree and, upon request, splits of any samples taken by Defendant or its representatives, contractors, or consultants;

d.      obtain documentary evidence, including photographs and similar data relating to matters addressed under this Consent Decree, subject to Defendant's right to assert privilege over documents; and

e.      assess Defendant's compliance with this Consent Decree.

60.      Upon advance request, Defendant shall provide EPA or its authorized representatives splits of any samples taken by Defendant.  Upon advance request, EPA shall provide Defendant splits of any samples taken by EPA.

61.      Until five years after the termination of this Consent Decree, Defendant shall retain, and shall instruct its contractors and agents to preserve, all non-identical copies of all documents, records, or other information (including documents, records, or other information in electronic form) in its or its contractors' or agents' possession or control, or that come into its or its contractors' or agents' possession or control, and that relate in any manner to Defendant's performance of its obligations under this Consent Decree.  This information-retention requirement shall apply regardless of any contrary corporate or institutional policies or procedures.  At any time during this information-retention period, upon request by the United

-30-

States, Defendant shall provide copies of any documents, records, or other information required to be maintained under this Paragraph, subject to Defendant's right to assert privilege over documents in the manner and subject to the limitations described in Paragraph 62.

62.     At the conclusion of the information-retention period provided in the preceding Paragraph, Defendant shall notify the United States at least 90 Days prior to the destruction of any documents, records, or other information subject to the requirements of the preceding Paragraph and, upon request by the United States, Defendant shall deliver any such documents, records, or other information to EPA.  Defendant may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law, and withhold them on that basis.  If Defendant asserts such a privilege, it shall provide the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of each author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Defendant.  However, no documents, records, or other information created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

63.     Defendant may also assert that information required to be provided under this Section is protected as Confidential Business Information ("CBI") under 40 C.F.R. Part 2. As to any information that Defendant seeks to protect as CBI, Defendant shall follow the procedures set forth in 40 C.F.R. Part 2.

64.     This Consent Decree in no way limits or affects any right of entry and inspection, or any right to obtain information, held by the United States pursuant to applicable

federal or State laws, regulations, or permits, nor does it limit or affect any duty or obligation of Defendant to maintain documents, records, or other information imposed by applicable federal or State laws, regulations, or permits.

## XI.  EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

65.    This Consent Decree resolves the civil and administrative claims of the United States for the violations alleged in the Complaint filed in this action, and the Notice of Potential Violation issued by EPA to Defendant dated May 8, 2009, through the date of lodging of this Consent Decree.

66.    The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree, except as expressly stated in Paragraph 65.  This Consent Decree shall not be construed to limit the rights of the United States to obtain penalties or injunctive relief under the Act or implementing regulations, or under other federal or State laws, regulations, or permit conditions, except as expressly specified in Paragraph 65.

67.    In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, other appropriate relief relating to the Facility or Defendant's violations, Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to claims that have been specifically resolved pursuant to Paragraph 65.

68.     This Consent Decree is not a permit, or a modification of any permit, under any federal, State, or local laws or regulations.  Defendant is responsible for achieving and maintaining complete compliance with all applicable federal, State, and local laws, regulations, and permits; and Defendant's compliance with this Consent Decree shall be no defense to any action commenced pursuant to any such laws, regulations, or permits, except as set forth herein. The United States does not, by its consent to the entry of this Consent Decree, warrant or aver in any manner that Defendant's compliance with any aspect of this Consent Decree will result in compliance with provisions of the Act, 42 U.S.C. § 7401 *et seq.*, or with any other provisions of federal, State, or local laws, regulations, or permits.

69.     This Consent Decree does not limit or affect the rights of Defendant or of the United States against any third parties, not party to this Consent Decree, nor does it limit the rights of third parties, not party to this Consent Decree, against Defendant, except as otherwise provided by law.

70.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

## XII.  COSTS

71.     The Parties shall bear their own costs of this action, including attorneys' fees, except that the United States shall be entitled to collect the costs (including attorneys' fees) incurred in any action necessary to collect any portion of the civil penalty or any stipulated penalties due but not paid by Defendant.

## XIII.  <u>NOTICES</u>

72.    Unless otherwise specified in this Consent Decree, whenever notifications, submissions, or communications are required by this Consent Decree, they shall be made in writing and addressed as follows:

<u>As to the United States by email</u>:      eescdcopy.enrd@usdoj.gov
                                             Re: DJ # 90-5-2-1-09845


<u>As to the United States by mail</u>:      EES Case Management Unit
                                             Environment and Natural Resources Division
                                             U.S. Department of Justice
                                             P.O. Box 7611
                                             Washington, D.C.  20044-7611
                                             Re: DJ # 90-5-2-1-09845


<u>As to EPA</u>:                             Denis Kler
                                             Environmental Engineer
                                             Air, Pesticides and Toxics Management Division
                                             U.S. EPA, Region 4
                                             61 Forsyth Street, S.W.
                                             Atlanta, GA 30303
                                             Kler.denis@epa.gov


<u>As to the State</u>:                       Randy Stewart
                                             Manager, Enforcement Section
                                             SC DHEC, Bureau of Air Quality
                                             2600 Bull Street
                                             Columbia, SC  29201
                                             stewarpr@dhec.sc.gov


<u>As to Defendant</u>:                       Ned Damron
                                             Director of Technical Engineering
                                             JW Aluminum Company
                                             435 Old Mt. Holly Road
                                             Mount Holly, SC 29445

                                             Phillip L. Conner
                                             Williams Mullen
                                             1441 Main Street, Suite 1250
                                             Columbia, SC 29201

73.     Any Party may, by written notice to the other Parties, change its designated notice recipient or notice address provided above.

74.     Notices submitted pursuant to this Section shall be deemed submitted upon mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties in writing.

## XIV.  EFFECTIVE DATE

75.     The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

## XV.  RETENTION OF JURISDICTION

76.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Sections IX (Dispute Resolution) and XVI (Modification), or effectuating or enforcing compliance with the terms of this Consent Decree.

## XVI.  MODIFICATION

77.     The terms of this Consent Decree, including any attached appendices, may be modified only by a subsequent written agreement signed by all the Parties.  Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

-35-

78.     Any disputes concerning modification of this Consent Decree shall be resolved pursuant to Section IX of this Consent Decree (Dispute Resolution), provided, however, that, instead of the burden of proof provided by Paragraph 57, the Party seeking the modification bears the burden of demonstrating that it is entitled to the requested modification in accordance with Federal Rule of Civil Procedure 60(b).

XVII.  TERMINATION

79.     After Defendant has completed the requirements of Section V (Compliance Requirements) of this Consent Decree and has paid the civil penalty and any accrued stipulated penalties as required by this Consent Decree, Defendant may serve upon the United States a Request for Termination, stating that Defendant has satisfied those requirements, together with all necessary supporting documentation.

80.     Following receipt by the United States of Defendant's Request for Termination, the Parties shall confer informally concerning the Request and any disagreement that the Parties may have as to whether Defendant has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Consent Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Consent Decree.

81.     If the United States does not agree that the Consent Decree may be terminated, Defendant may invoke Dispute Resolution under Section IX of this Consent Decree. However, Defendant shall not seek Dispute Resolution of any dispute regarding termination until 60 Days after service of its Request for Termination.

## XVIII.  PUBLIC PARTICIPATION

82.    This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment in accordance with 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  Defendant consents to entry of this Consent Decree without further notice and agrees not to withdraw from or oppose entry of this Consent Decree by the Court or to challenge any provision of the Consent Decree, unless the United States has notified Defendant in writing that it no longer supports entry of the Consent Decree.

## XIX.  SIGNATORIES/SERVICE

83.    Each undersigned representative of Defendant and the Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

84.    This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.  Defendant agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree and to waive the formal service requirements set forth in Rules 4 and 5 of the Federal Rules of Civil Procedure and any applicable Local Rules of this Court including, but not limited to, service of a summons.  The Parties agree that Defendant need not file an answer to the Complaint unless or until the Court expressly declines to enter this Consent Decree.

## XX.  INTEGRATION

85.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Consent Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XXI.  FINAL JUDGMENT

86.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to the United States and Defendant.

## XXII.  APPENDICES

87.     The following appendices are attached to and part of this Consent Decree:

"Appendix A" is the Hydrogen Fluoride Testing Plan; and

"Appendix B" is the Melting Furnace Monitoring Plan.

## XXIII.  <u>HEADINGS</u>

88.    Headings to the Sections and Subsections of this Consent Decree are provided for convenience and do not affect the meaning or interpretation of the provisions of this Consent Decree.

Dated and entered this <u>14</u>th day of November, 2017.

_____
David C. Norton
United States District Judge

Signature Page for United States v. JW Aluminum Company Consent Decree

FOR PLAINTIFF UNITED STATES OF AMERICA:

ELLEN M. MAHAN
Deputy Section Chief
Environmental Enforcement Section
Environment and Natural Resources Division
United States Department of Justice

BETH DRAKE
United States Attorney

Date: September 19, 2017        By:    s/Brook Andrews
                                       BROOK ANDREWS (#10231)
                                       Assistant United States Attorney
                                       1441 Main Street, Suite 500
                                       Columbia, S.C. 29201
                                       Telephone (803) 929-3056
                                       Brook.Andrews@usdoj.gov

DAVIS H. FORSYTHE
Trial Attorney
Environmental Enforcement Section
Environment & Natural Resources Division
United States Department of Justice
999 18th Street, South Terrace – Suite 370
Denver CO 80202

<u>Signature Page for United States v. JW Aluminum Company Consent Decree</u>

FOR PLAINTIFF UNITED STATES OF AMERICA (CONT.):


<u>8 - 3 - 2017</u>
Date

Suzanne Nubicbor
MARY J. WILKES
Regional Counsel
U.S. Environmental Protection Agency, Region 4
61 Forsyth Street, S.W.
Atlanta, GA 30303

Signature Page for United States v. JW Aluminum Company Consent Decree

FOR DEFENDANT JW ALUMINUM COMPANY:

April 18, 2017
_____
Date

William S. Brant, Jr.
_____
WILLIAM S. BRANT, Jr.
Chief Operating Officer
JW Aluminum Company
435 Old Mount Holly Road
Goose Creek, SC 29445